**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DUSTIN WIECEK,

    Petitioner,                                             Civil No. 2:06-CV-12233
                                                          HONORABLE ARTHUR J. TARNOW
v.                                                   UNITED STATES DISTRICT JUDGE

BLAINE C. LAFLER,

    Respondent,
_____/

**OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

    Dustin Wiecek, ("petitioner"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his conviction for first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(g) on the ground that the state court's ruling denying the admission of the writings of the complainant where she acknowledged other instances where she had alcohol induced blackouts was denial of his Constitutional rights of confrontation and to present a defense.  The Magistrate Judge issued a  Report and Recommendation (R & R) that the petition for writ of habeas corpus should be denied.  Petitioner filed objections to the R & R.

    The Court  rejects in part the Magistrate Judge's recommendation and will conditionally grant the petition for writ of habeas corpus, based on petitioner's first claim that he was denied his Sixth Amendment rights to confrontation and to present a defeense.  The Court will adopt the Magistrate Judge's recommendation  regarding the remaining claims contained in the petition.

1

## I. Background

Petitioner was originally charged with three counts. The first count was of willfully mingling Gamma Hydroxybutyrate (GHB), a poison or harmful substance, with a drink while he knew or should have known that the drink might be ingested. The second count was of first-degree criminal sexual conduct during the commission of the felony of poisoning. The third count was of first-degree criminal sexual conduct, the aggravating factor being that he knew or should have known that the complainant was physically helpless.

Petitioner's defense was he did not use poison and he did not know the complainant was in a blackout. That is, he thought she was able to consent. A defense expert described the appearance of someone in an alcohol induced black out as seeming to be awake.

The jury agreed with the Petitioner on the first two counts. They acquitted him of the charges related to the use of poison. They convicted him on the third count of sex involving a helpless person. They returned the verdicts on the third day of deliberation after telling the court on the second day that they were deadlocked.

Prior to trial, petitioner's counsel moved the Court for permission to use excerpts from the complainant's journal in cross examination. The journal contained the following poem, which described an alcoholic blackout:

```
I woke up confused                    And who's that sleeping
I woke up drunk                       next to me?
I woke up and hit my head             I better run
on my nightstand                      I better hide
Wait a second                         'cause I don't know
that's not my nightstand              What I did last night
Where the hell am I.                  .............
```

I woke up confused
I didn't know where I was
except that I had
gone to an apartment complex
Too bad I woke up
in a car
with somebody else's
clothes on and no bra
I didn't think this
would happen again
Drinking is just for
those who have nothing else
to do
I guess I did plenty
and now I now (sic) whom
(undecipherable)

Knocking at the window
told me I wasn't allowed
to be here anymore
So I went inside
and ended up naked again
At least it was
a familiar face this time
At least I know his last name
I guess that makes it okay
to do it again.[1]

---

[1] *See* Petitioner's Exhibit 6.

The trial court denied petitioner's motion, ruling that the poem was not admissible as character evidence under Rule 404(a), and that introduction of the poem was barred by the rape shield statute. MCL750.520j(1).

The complainant testified that she met petitioner at a restaurant, where both were employed. The two were just friends and were not romantically involved. They had planned to meet at his home during the day and sit in the hot tub in the backyard and get drunk

The complainant arrived at petitioner's house at about 11:00 am. They began drinking rum and beer. She was feeling slightly intoxicated. The petitioner then brought out a glass of wine. After petitioner brought this glass of wine to the tub, the complainant stated that she "wasn't aroused toward the defendant, Mr. Wiecek, but I began to act in a way that was, it could only be described as sexual. It wasn't in my character to normally behave that way."

The complainant removed the bottom of her bathing suit and let the hot tub water jet strike her inner legs and vaginal area. The complainant claimed that this was the last thing she remembered until petitioner woke her. She was on his bed wearing her own flannel pants but one of petitioner's shirts. The complainant indicated that she felt groggy but not hung over. Petitioner informed the complainant that he had lost his virginity to her. Petitioner told the complainant that he had trouble keeping his genitals inside of her vagina and had to stop because she was making noise, but that she seemed to be enjoying the sex.

The complainant had no recollection of what petitioner was talking about. Petitioner was surprised that she could not remember having sex with him. The complainant estimated that she was unconscious for three hours, from about 1:00 to 4:00 p.m.

The complainant admitted that she had prior experiences with drinking alcohol and being in a hot tub. Before her encounter with petitioner, she had not heard of GHB.

The complainant testified that on the following day, she was emotionally shook up and had bruises. The complainant's friend suggested that she see a doctor.

Officer Newsome testified that the Wiecek's family computer was removed pursuant to the execution of a search warrant. Officer Newsome acknowledged there was no evidence on the computer to show that petitioner had done any research or looked up anything on GHB.

At trial, part of petitioner's theory was that the complainant was not unconscious and physically helpless, but had experienced an alcoholic blackout. To support this theory, petitioner presented Dr. Bernard Eisenga as an expert witness. Dr. Eisenga testified that people suffering from an alcoholic blackout "may appear to be awake and coherent but, in reality, they are not," and that such people "basically have an amnesic period of time where they don't remember what's going on. They may appear to be functioning normally, but they are not."

The complainant had admitted on cross-examination that although she had not had an alcoholic blackout prior to the date of the sexual assault, she acknowledged having alcoholic blackouts subsequent to the alleged assault.

5

Petitoiner's conviction was affirmed on appeal. *People v. Wiecek,* No. 247596 (Mich.Ct.App. February 8, 2005); *lv. den.* 474 Mich. 971, 707 NW2d 207 (2005).

On May 16, 2006, petitioner filed his habeas petition, seeking habeas relief on six grounds.[2] The first ground has merit.

> I. PETITIONER WAS DENIED HIS RIGHT TO CONFRONT WITNESSES AND PRESENT A DEFENSE IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS BECAUSE HE WAS NOT ALLOWED TO USE EXCERPTS FROM THE COMPLAINANT'S JOURNAL DURING CROSS-EXAMINATION.

The Court referred the matter to the Magistrate for a Report and Recommendation. The Magistrate Judge recommended that the petition for writ of habeas corpus be denied as to all six grounds. Petitioner subsequently filed an objection to the R & R. Oral arguments were conducted before this Court on May 18, 2009.

## II. Discussion

A district court reviews a Magistrate Judge's R & R *de novo* when objections are made. See Fed.R.Civ.P. 72(b). The reviewing court may "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.*; *See also Campbell v. United States,* 266 F. Supp. 2d 587 (E.D. Mich. 2003). After *de novo review*, the Court finds that most of Petitioner's objections to the R & R are without merit. However, the Court disagrees with the Magistrate Judge's finding that there was no violation of Petitioner's Sixth Amendment rights to confrontation and to present a defense when the trial court refused

---

[2]Grounds II-VI are set forth in the R & R.

to allow petitioner to cross-examine the complainant with the poem from her journal. For the reasons that follow, the Court grants a conditional writ of habeas corpus with respect to this claim.

On appeal, the Michigan Court of Appeals rejected petitioner's claim that the exclusion of this evidence violated petitioner's right to confront the victim. The court concluded that the poem "was not admissible for the purpose of proving the victim's character under MRE 404(a)(2), as in effect at that time, because the rule expressly precluded such evidence in a prosecution for criminal sexual conduct." *Wiecek,* Slip. Op. at * 5. The Michigan Court of Appeals further held that exclusion of the evidence pursuant to the rape shield statute did not violate petitioner's right to confront the victim because the sexual conduct described in the poem was not relevant. With respect to the issues of consent and physical helplessness, the court reasoned that the complainant's poem was undated and may have described a fictional event. Further, even if the poem described actual events, "the evidence had little or no relevancy to the issue of the victim's consent with defendant with regard to the charged incident." *Id.* at 6. The court also rejected petitioner's argument that the poem was relevant to the victim's motive to testify as she did. *Id.*

Although acknowledging that "this issue presents a close question", *See* Report and Recommendation, p. 14, the Magistrate Judge recommended that this Court reject petitioner's Confrontation Clause claim, on the ground that the proposed evidence merely attacked the complainant's general credibility, therefore, its exclusion did not violate his Sixth Amendment right to confrontation. *Id.* at pp. 14-19.

Petitioner has always contended, both in the state courts on his direct appeal, as well as before this Court, that the trial court's decision to exclude evidence of the complainant's poem violated his rights to confrontation and to present a defense, because such evidence was highly relevant to the issues of consent and the complainant's alleged physical helplessness. Such evidence would also have reinforced petitioner's argument that the complainant had an ulterior motive to allege a sexual assault, namely, shame or guilt regarding her "unseemly behavior on the night in question."

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court

8

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Sixth Amendment Confrontation Clause guarantees the accused the right to cross examine adverse witnesses to uncover possible biases and expose the witness' motivation in testifying. *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id.* at 315. In cases "involving trial court restrictions on the scope of cross-examination, the [Supreme] Court has recognized that Confrontation Clause questions will arise because such restrictions may 'effectively ... emasculate the right of cross-examination itself.'" *Delaware v. Fensterer*, 474 U.S. 15, 19 (1985)(alteration in original)*(quoting Smith v. Illinois*, 390 U.S. 129, 131 (1968)). It is well-established in constitutional jurisprudence that "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." *Davis*, 415 U.S. at 316. Moreover, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.*, at 316-17. The Supreme Court has held that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).

The Magistrate Judge denied petitioner's confrontation claim on the ground that the complainant's poem merely attacked the complainant's general credibility.

In *Boggs v. Collins*, 226 F.3d 728, 737 (6th Cir. 2000), the Sixth Circuit interpreted *Davis* and *Van Arsdall* as setting forth a rule "that cross-examination as to bias, motive or prejudice is constitutionally protected, but cross-examination as to general credibility is not." In so ruling, the Sixth Circuit opined that Justice Stewart's concurrence in *Davis* "underscored that the Confrontation Clause was implicated only because *Davis* was seeking to show bias or prejudice." *Id.* at 737. The panel in *Boggs* further opined that *Van Arsdall* and subsequent Supreme Court and Sixth Circuit cases "have adhered to the distinction ... drawn by Justice Stewart...." *Id.*

The Sixth Circuit has subsequently called into question the decision in *Boggs.* In *Vasquez v. Jones*, 496 F. 3d 564 (6th Cir. 2007), the panel criticized the holding in *Boggs* because "it unquestioningly accepts Justice Stewart's attempt to commandeer the majority opinion in *Davis.*" *Id.* at 573; *See also Hargrave v. McKee,* 248 Fed. Appx. 718, 727 (6th Cir. 2007)(Sixth Circuit has "recently cast considerable doubt" over whether the holding in *Boggs* is binding). Nothing in the majority decisions in *Davis* or *Van Arsdall* has so limited the right of confrontation solely to issues involving motive, bias or prejudice, as the panel in *Boggs* suggests.

Secondly, even assuming that questions as to general credibility are not constitutionally protected, this Court would nonetheless conclude that the poem in question did not go merely to the complainant's general credibility, but instead went to the issues of consent, motive, and the complainant's ability to remember and accurately perceive the events on the night in question.

10

It also impacted his right to present a defense as it buttressed the expert testimony concerning alcohol induced blackouts. That was crucial to the defense of consent. That is, Petitioner believed the complainant was awake and willingly engaged in sex. *Washington v Texas*, 388 U.S. 14 (1967).

In *Lewis v. Wilkerson,* 307 F. 3d 413 (6th Cir. 2002), the Sixth Circuit held that a habeas petitioner's Sixth Amendment right to confrontation was violated when the trial court excluded portions of a rape victim's diary, pursuant to the Ohio Rape Shield statute. In so ruling, the Sixth Circuit rejected the idea that the excerpts from the diary went solely to the victim's general credibility. Instead, the Sixth Circuit concluded that certain statements in the victim's diary were evidence of the victim's consent and improper motive to press charges against the petitioner and were therefore admissible. *Id.* at 420-21. The Sixth Circuit further concluded that without the excluded statements, the jury did not have adequate information to assess the defense theories of consent and improper motive. *Id.* at 421. Finally, the Sixth Circuit ruled that the violation of petitioner's Sixth Amendment right to confrontation outweighed any violation of Ohio's rape shield law. *Id.* at 421-22.

In *Hargrave v. McKee, supra*, the Sixth Circuit held that the trial court's decision to limit the cross-examination of the complainant and sole eyewitness in a carjacking case about her psychiatric conditions implicated Confrontation Clause concerns, because the petitioner sought to attack the complainant's perceptions and memory of the events at issue by arguing that the complainant's psychiatric condition, including delusions similar to allegations for which the petitioner was being prosecuted, called into question her account of the events. *Hargrave,* 248 Fed. Appx. at 726. The Sixth

Circuit further noted that the complainant's state of mind at the time of the incident was at issue, as the petitioner could not be convicted of carjacking if the complainant consented to petitioner taking her car temporarily. *Id.*  The Sixth Circuit noted that: "*Davis* requires that a defendant be allowed to test a witness's perceptions and memory via *indirect* means[,]". *Id.* (emphasis original).  Moreover, unlike a general attack on credibility, the proposed cross-examination did not seek merely to demonstrate that the complainant's "past behavior indicated that she might be a person who was more willing to lie under oath than the average person." *Id.* at 727.  Instead, the proposed cross-examination, if successful, "raised a strong possibility that [the complainant's] psychiatric condition rendered her testimony unreliable regarding the very events at issue and, accordingly, was more similar to the possibility of unreliability raised by questions of motive or bias than to that raised by questions of general character for truthfulness." *Id.*

The exclusion of the complainant's poem concerning her alcoholic blackouts violated petitioner's Sixth Amendment rights to confrontation and to present a defense. Contrary to the Magistrate Judge's findings, the evidence did not merely attack the complainant's general credibility.  Instead, this evidence went to the issue of consent and the complainant's physical ability to appear to consent to engage in sexual intercourse with petitioner It also went to the issue of the victim's improper motive to press charges against petitioner because of the shame that she felt about this incident. *Lewis,* 307 F. 3d at 420-21.

In particular, statements in the poem such as "I better run", "I better hide," "cause I don't know What I did last night" would be evidence that the complainant had

felt ashamed in the past for consuming large amounts of alcohol and then engaging in sexual behavior with strangers. This evidence would have supported petitioner's theory that the complainant was motivated to bring these charges because she felt guilty over her "unseemly behavior on the night in question."

In addition, the complainant's poem about her history of alcoholic blackouts and attendant sexual behavior implicated Confrontation Clause concerns, because such evidence could have been used to attack the complainant's perceptions and memory of the events from the night in question. *Hargrave,* 248 Fed. Appx. at 726. In particular, the complainant's description of her alcoholic blackouts in the poem called into question her account of the events and would have supported petitioner's theory that the complainant had not been drugged, but had been going through an alcoholic blackout on the night in question, but had nonetheless agreed to engage in consensual sex with petitioner. The jury found she was not drugged.

In particular, statements like "I woke up confused, I woke up drunk, with somebody else's clothes on and no bra" would have bolstered petitioner's defense that the complainant had consensual sex with him while in an alcoholic blackout. The proposed cross-examination, if successful, raised a strong possibility that the complainant's history of alcoholic blackouts "rendered her testimony unreliable regarding the very events at issue and, accordingly, was more similar to the possibility of unreliability raised by questions of motive or bias than to that raised by questions of general character for truthfulness." *Hargrave*, 248 Fed. Appx at 727

More importantly, the complainant's testimony was integral to this case, as there were no other witnesses to the crime and she herself could not remember being

sexually assaulted. *Hargrave,* 248 Fed. Appx. at 728.  Therefore, the exclusion of the complainant's journal entry implicated petitioner's rights to confrontation and to present a defense..

The mere fact that the complainant's poem may have been prejudicial against her did not justify its exclusion from evidence, in light of these Confrontation Clause concerns.  In *Olden v. Kentucky,* 488 U.S. 227 (1988), the defendant had been charged with the rape and kidnap of the victim.  The defendant's defense was consent, and he sought to confront the victim with evidence of her cohabitation with another man.  The defendant's theory was that the victim had fabricated the rape and kidnapping charges to protect her relationship with the other man.  The trial court excluded this evidence because while the victim was white, her boyfriend and the defendant were black.  The court believed this fact would have created prejudice against the victim.  In finding that the exclusion of this evidence violated the defendant's Sixth Amendment right to confrontation, the Supreme Court concluded that the prejudicial effect of any testimony could not "justify the exclusion of cross-examination with such strong potential to demonstrate the falsity of [the victim's] testimony." *Id.* at 232.

Any prejudicial effect to the complainant or the prosecution in this case did not outweigh petitioner's vital right to confront the complainant.  Moreover, although permitting cross-examination on the statements in this poem could lead to a trial of the complainant's sexual history with other men, the trial court could minimize any danger of undue prejudice by admitting the evidence with a cautionary instruction and strictly

limiting the scope of cross-examination concerning the complainant's sexual activity and reputation. *Lewis,* 413 F. 3d at 322, 323.

The exclusion of the complainant's poem in this case violated petitioner's Sixth Amendment rights of confrontation and to present a defense. In addition, the error was not harmless. The test for harmless error, for purposes of determining habeas corpus relief, is whether the error made at trial "had a substantial and injurious effect or influence in determining the jury's verdict, rather than whether the error was harmless beyond a reasonable doubt." *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Fry v Pliler,* 551 U.S. 112 (2007).

In the present case, there were no eyewitnesses to the alleged assault here. Even the complainant had no memory of what had transpired. More importantly, the jury, after deliberating three days, acquitted petitioner of the charge of giving GHB to the complainant, as well as the first-degree criminal sexual conduct charge that was based upon petitioner giving GHB to the complainant. The jury obviously rejected the prosecutor's theory that petitioner had drugged the complainant.

The excluded poem was the strongest evidence that the complainant had engaged in consensual sex with petitioner while suffering from an alcoholic blackout. Further it showed that she had a motive to accuse petitioner of sexually assaulting her because of her shame over her actions of getting intoxicated and engaging in sex with petitioner. The trial court's decision to exclude this poem had a "substantial and injurious influence in determining the jury's verdict." As such, the evidentiary decision was not harmless error. *See Lewis,* 413 F. 3d at 322.

Because petitioner's Sixth Amendment rights to confrontation and to present a complete defense was violated, petitioner is entitled to a conditional writ of habeas corpus on his first claim. *Lewis,* 413 F. at 423.

Regarding the remainder of petitioner's claims, the Magistrate Judge ruled correctly on these claims. Therefore, the Court will adopt the Magistrate Judge's reasoning on these claims and will deny petitioner's objections to the R & R with respect to these claims. *See e.g. Miller v. Stovall,* 573 F. Supp. 2d 964, 982 (E.D. Mich. 2008).

### III.  ORDER

**Based on the foregoing, the Court:**

**(1) GRANTS in part and DENIES in part the Objections. The Court GRANTS petitioner's objections to the Magistrate's conclusion that the exclusion of the complainant's journal did not violate petitioner's Sixth Amendment right of confrontation and to present a defense;**

**(2) ADOPTS in part and REJECTS in part the reasoning of the Report and Recommendation,**

**(3) REJECTS in part the recommendation of the Report and Recommendation; and**

**(4) CONDITIONALLY GRANTS the Petition for Writ of Habeas Corpus because the exclusion of the complainant's journal violated petitioner's Sixth Amendment rights of confrontation and right to present a defense. Unless the State takes action to afford petitioner a new trial within ninety days of the date of**

**this opinion, petitioner may apply for a writ ordering respondent to release him from custody forthwith.**


S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  August 25, 2009


I hereby certify that a copy of the foregoing document was served upon counsel of record on August 25, 2009, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary

17